INHABITANTS OF HOULTON *vs.* INHABITANTS OF LUDLOW.

Aroostook.    Opinion June 7, 1882.

*Pauper Settlement.*

It is provided by R. S., c. 24, § 1, that, if a marriage be procured by the agency or collusion of town officers for the purpose of changing the settlement of a pauper, the settlement shall not be changed thereby. This prevents the wife taking the settlement of the husband. But their children will take his settlement instead of hers.

The man's settlement was in the town of Ludlow; the woman's in Houlton. The officers of Houlton procured the marriage on May 25, 1877. On July 27, 1877, a child was born who became legitimated by the marriage. *Held*, that the child took the settlement of the father and not that of the mother. BARROWS and SYMONDS, JJ., dissenting.

ON EXCEPTIONS.

Assumpsit for pauper suplies furnished Mrs. Nina L. Milroy and her infant child.

The settlement of the paupers was denied by the defendants on the ground that the marriage of Nina L. Milroy then of Houlton, to Theodore Milroy then of Ludlow, was procured by the agency or collusion of the municipal officers of the plaintiff town. The verdict was for the defendants. The marriage took place May 25, 1877. The child was born July 27, 1877. The presid-

ing judge in his charge to the jury, having referred to the marriage as inoperative, if procured by collusion to affect the settlement of the child was requested but declined, *pro forma*, to give the following instructions.

"The child had the settlement of its father, Theodore Milroy, unaffected by any question of how the marriage was procured, and so far as the settlement of the child is concerned and the liability of the defendant town for so much of the supplies as was furnished for its benefit, no question of collusion or agency of the officers of either town or of any other person can intervene. If you find the defendant town liable for supplies furnished for the benefit of the child, you may determine from the whole of the testimony the amount of such supplies."

To the refusal to give such instructions the plaintiffs alleged exceptions.

*Lyman S. Strickland, and Madigan and Donworth,* for the plaintiffs.

*Powers and Powers,* for the defendants.

PETERS, J. The town of Houlton sues the town of Ludlow for pauper supplies furnished a married woman and her infant child. It appears, that the woman, having her settlement in Houlton, was married on May 25, 1877, to a man whose settlement was in Ludlow, and that the marriage was procured by the overseers of Houlton, with a view of transferring the settlement of the wife to that of the husband. But by the statute her settlement, on account of such fraud or collusion, remained unchanged. On July 27, 1877, the child was born. It was ruled at the trial that the child took the mother's and not the father's settlement. The ruling was erroneous.

The statutory provision to be interpreted is this : "When it appears in a suit between towns involving the settlement of a pauper, that a marriage was procured to change it by the agency or collusion of the officers of either town, or any person having charge of such pauper under authority of either town, the settlement is not affected by such marriage." The act originally passed in 1846, (c. 226,) which is much condensed by the present statute without any design to alter its meaning, asserts, that, if the

marriage be procured by overseers or agents, "with a view of changing the settlement of such pauper or person *thus married,*" and of fixing the settlement of "such pauper or person" in another town, "then such marriage shall be deemed so far fraudulent that *no new* settlement shall be acquired by such marriage, but the settlement of *such pauper* or person shall remain unchanged by such marriage."

It is " the settlement of a pauper" that is not to be changed by the marriage, namely, the married pauper.   Only one person is spoken of, and no language is used which can reasonably be construed to extend the application of the statute beyond the one pauper.   When she was married, there was no other person in existence whose settlement could be affected thereby.   "The settlement of *such* pauper or person shall remain unchanged by such marriage."   Such person is the person whose marriage is fraudulently procured.   How can a person unborn gain a "*new* settlement" or "*change* a settlement," in the language of the act? But for the statutory provision before quoted, the settlement of the mother would have been transferred from Houlton to Ludlow by the marriage, and this change the statute prevents.   But the settlement of her lawful children could undergo no such change, for the reason that they would have no settlement in Houlton to be changed.   Following the condition of their lawful father, their settlement would be in Ludlow.

The ruling, made at the trial, entirely disregards the positive provision of the statute, that "legitimate children have the settlement of the father, if he has any in the state." This is without exception or qualification, and cannot be overcome by any implication to be derived from any other statute.

It is said that the interpretation of the statute which we adopt may separate mothers from their children.   But the other interpretation separates children from their fathers, to whose possession and care they in most instances legally belong, and upon whose ability and efforts to support and educate them they principally depend.   By the ruling, the father would have his settlement in one town, and his lawful offspring have theirs in another town, legitimate children being thus classed with illegitimate children, a result never before seen in the operation of the pauper laws in this state.

It must be considered, that, if the doctrine implied by the ruling at *nisi prius* prevails, it must be a general doctrine for such cases. It would not seem to be a just penalty for all cases, that, because the marriage is collusively procured, not only should the wife's settlement be unchanged by it, but that all of her husband's children begotten with her should be taken from his settlement and annexed to hers. Even in the case at bar, an extreme case perhaps, an unjust act has not been consummated. There was no injustice in inducing a man to marry a woman, whose child soon to be born became honestly legitimated thereby. As it is, Ludlow avoids the support of the wife. Had the husband married some other woman, or this woman under other circumstances, he with all his family might have been a charge upon that town.

*Exceptions sustained.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.

DISSENTING OPINION BY

BARROWS, J. Section first of chapter twenty-four of the Revised Statutes, provides among other things as follows: "When it appears in a suit between towns involving the settlement of a pauper that a marriage was procured to change it by the agency or collusion of the officers of either town . . . the settlement is not affected by such marriage."

This suit brought by Houlton against Ludlow involves the settlement of Nina L. Milroy and her infant child, and the defence was, that neither of the paupers has a settlement in the defendant town, because it was alleged that the marriage of the mother through which alone either of them could derive a settlement in Ludlow, "was procured to change it by the agency or collusion of the officers of" Houlton. The defendants' brief statement asserts that at the time of the marriage, the mother was chargeable as a pauper to Houlton where she had her settlement, and that the marriage thus fraudulently procured took place at the Houlton poor-house without the usual preliminary formalities. The exceptions show that the mother was married to Milroy, May 25, and the child was born July 27, 1877 ; that "the presid-

ing judge in his charge to the jury having referred to the marriage as inoperative *if procured by collusion to affect the settlement of the child*" was requested to instruct the jury that "the child had the settlement of the father unaffected by any question how the marriage was procured," and, in substance, that as to one of the paupers whose settlement was involved in this suit although they might be satisfied that the marriage (through which alone the settlement in Ludlow was to be derived) was procured by the fraud and collusion of the officers of Houlton, this would not prevent the child from having its derivative settlement in Ludlow, nor affect the right of Houlton to recover so much as had been expended for that pauper, and, in fine, that as to him, the fraud which changed his settlement from Houlton to Ludlow might be regarded as not forbidden by the statute, and therefore that the marriage collusively brought about for that purpose would have its intended effect, the statute to the contrary notwithstanding. I see no good reason for so restricting the operation of this remedial statute as to deprive it of the most important part of its power to restrain the mischief which it was enacted to prevent.

Least of all in a case like the present where it could hardly. be doubted that if the marriage was procured by the collusion of the officers of the plaintiff town to change the settlement of the mother, they had the same purpose with regard to the child which was so near its birth and prospectively chargeable. The collusive furnishing of supplies by town officers to prevent a man from gaining a settlement in their town by having his home therein for five successive years, "without receiving supplies as a pauper" has never been regarded by the courts as interrupting the process of gaining a settlement, even though the supplies may have been received and consumed and the case thus brought within the precise terms of the statute. It seems to have been supposed that in that instance the courts had power without being liable to the charge of judicial legislation to guard towns against the fraudulent practices of the officers of other towns. Upon the same narrow construction of the settlement acts which the plaintiffs call for here, it would seem that the court ought to say in such cases, the man has received pauper supplies within the five years, and though their reception was procured by the fraudu-

lent practices of the town officers, he gains no settlement because the statute requires five years residence without receiving pauper supplies and makes no provision that the fraud of the town officers shall affect the question. But here the inquiry is, how shall a statute provision, obviously framed to prevent a fraudulent practice, lest it should otherwise be permitted by oversight to succeed, *be construed?*

The rule is too familiar to need citations in its support that it shall, if possible, be so construed as to accomplish the end which the legislature had in view, and not so as partially to defeat it; that it shall be liberally construed to advance the remedy for the mischief which it aims to prevent. What is that mischief? It is the collusive interference of town officers to procure marriages to change the settlement of their poor, and thus to relieve their towns from a burden present or prospective by imposing it upon some other town. I do not perceive that it is necessary so to construe the act that the greater part of the temptation to practice the fraud upon the law, shall still remain, and the more important settlements in controversy *shall* be affected by marriages thus procured in defiance of the statute prohibition.

The paupers referred to in the statute are "the paupers whose settlement is in controversy in the suit," and I see no substantial reason why the collusion of the town officers should not have the same effect upon the derivative settlement of the child that it has upon the derivative settlement of the wife. The marriage is as obviously procured to affect the settlement of the child as it is that of the wife. The plain meaning of the statute is that the settlement of any pauper shall not be affected by a marriage so procured. That the marriage would change the settlement of a child who would be otherwise illegitimate whenever it would change that of the mother, is clear, and the express mandate of the statute is that the settlement, *i. e.* the settlement of the paupers in controversy in the suit, "shall not be affected by such marriage."

In the original enactment (c. 226, laws of 1846,) there was an express provision running thus, "then such marriage shall be deemed so far fraudulent that *no new settlement shall be acquired by such marriage*," which excludes the possibility of *deriving a*

*settlement for the child* through the fraudulent act of the town officers as completely as for the wife, and such was doubtless the design of the makers of the statute. Unless all settlements so derived were cut off, the town officers practicing the fraud would, without fear of defeat as to the more important part of their object, continue their course of fraudulent collusion, sure that it would be in part successful; and the fraud which vitiates all transactions between man and man, and all the judgments of courts thereon, would have at all events one secure stronghold from which, upon the construction contended for by plaintiffs' counsel, not even the court could oust it.

I cannot but think that the statute provision is simply declaratory of the common law, and that aside from it, it would still be competent for the court to apply the same common law principle which they do in a case of a collusive furnishing of pauper supplies by town officers, and not suffer the settlements of paupers to be affected by any collusive action on the part of the officers of the town which proposes to profit by it and impose the burdens which it would otherwise have to bear upon some other town. But however this may be, it seems clear to me that the statute covers any derivative settlement acquired by the marriage, that of the prospective progeny as well as that of the woman, and that it applies to those who become paupers after the collusive action of the town officers, as well as those who are paupers at the time the marriage is brought about. Any other construction would tend to defeat the manifest design of the statute and encourage the practices which it was meant to prohibit. Although this was a case of the procurement of the marriage of a woman who was at the time a pauper at the plaintiffs' poor-house, I do not feel disposed to sanction a construction which would result only in withholding relief until the marriage had been accomplished, and to encourage town officers to busy themselves in getting rid of their prospective paupers by procuring their intermarriage with men having settlements elsewhere, thus by well managed grafting ridding themselves of entire pauper races.

Plaintiffs' counsel urge that it is but justice that Ludlow being the place of settlement of the father of a child, which, but for the marriage would have been a bastard, should take and support the child. Even if the law made towns liable for the support of

bastard children begotten by their inhabitants as it does not, (wisely leaving the settlement of such children, where the burden of supporting them would be least—in the same town with the mother) counsel would still, in thus arguing, assume what is not in evidence, and what is as likely to be untrue as true. Town officers engaged in planting a prospective pauper upon another town, are not very particular about the paternity of the expected burden, and if they can find some worthless man, who has a settlement out of their own town, willing to be their instrument, it could hardly be expected that they would look into the evidence of paternity as they would if they were engaged simply in the performance of their legitimate duty to prosecute the father of a bastard child and compel *him* to assist the mother in its maintenance. The jury in effect found the town officers of Houlton guilty of procuring this marriage, in order to change the settlement of these paupers, the mother *and child.* * Plaintiffs' counsel concede that this is right so far as the mother is concerned. They make no complaint of the verdict or of the instructions as to her, and the jury were doubtless told that the honest performance of their duty by the Houlton town officers in prosecuting the father of a child likely to be born a bastard, would not subject them to the imputation of a breach of the implied mandate of this statute, even though such prosecution resulted in a marriage between the father and mother of the child, but that they must find the agency and collusion of the town officers for the purpose of procuring a change of the settlement of the paupers whose settlement was here in controversy, by means of the marriage.

Finding this, the case is within the *letter*, as well as the *spirit* of the statute, as regards the child as well as the mother.

The settlement of neither is affected by the marriage.

But as the majority of the court hold that these doctrines are not tenable, it seems desirable that the legislature should inquire, in the interest of humanity and public policy, whether the statute should not be either repealed or amended. As now construed, it not only fails to remove the temptation to fraudulent action on the part of town officers, but its practical effect is to impose upon the defrauded town the support of infants separated from mothers and turned over to strangers to be maintained at greater

cost, without the aid of the maternal instincts which even in the poorest, contribute so largely to their well being in infancy. The chief object of giving to both wife and children the settlement of the husband and father, is thus thwarted.

SYMONDS, J., concurred.